UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES

---------------------------------------------------------- x

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTE CONFLICT ID NUMBERS:

146246 (HUB INTERNATIONAL MIDWEST LIMITED), and
148019 (HUB INTERNATIONAL LIMITED).

---------------------------------------------------------- x

REPORT AND RECOMMENDATION <u>OF SPECIAL MASTER</u>

1:24-MC-03415-BMC-JAM

1:26-MC-04318-BMC-JAM

**Parties and Representatives**:

MCAG, Inc. (“MCAG”)
Sue Sagman
7150 Granite Circle
Toledo, OH 43617
(800) 355-0466
sue.sagman@mcaginc.com
Representative of MCAG

Spectrum Settlement Recovery (“Spectrum”)
Joey Hodges
P.O. Box 480
San Francisco, CA 94104
(415) 392-5900
jhodges@spectrumsettlement.com
Representative of Spectrum

Rule 23(b)(3) Class Plaintiffs (the “Class”)
Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

## I. Background

MCAG and Spectrum have both registered with the Class Administrator to claim a share of the proceeds of the settlement fund in *In re Payment Card Interchange Fee Merchant Discount Antitrust Litigation*, Dkt. no. 05-MD-1720 (E.D.N.Y.) ("*MDL 1720*") arising out of the payment card transactions of Hub International Midwest Limited, which has a Taxpayer Identification Number ("TIN") ending in 2425, and Hub International Limited, which has a Taxpayer Identification Number ("TIN") ending in 3028 (collectively, "Hub").[1] Each registrant is a TPF that signed an agreement to provide claim filing service to Hub.[2] After being advised of the conflict, different Hub employees sent emails selecting a preferred TPF: one chose MCAG and the other chose Spectrum. The Class Administrator then asked the parties to have Hub's authorized representative complete a Merchant Authorization Form ("MAF") designating its claim filing agent. At that point, Hub's Chief Procurement Officer Jay Sklar ("CPO Sklar") submitted a completed MAF selecting Spectrum as Hub's claim filing agent. I therefore respectfully recommend that the Court direct the Class Administrator to process Spectrum's registration of Hub's TIN and withdraw MCAG's.

---

[1] Before submitting a claim to receive the settlement proceeds corresponding to the payment card transactions of a merchant member of the Rule 23(b)(3) Settlement Class, a party must first register that merchant's TIN with the Class Administrator. The registrant must provide proof that it is the owner (or authorized representative of the owner) of the claim corresponding to that TIN. In the absence of supporting documentation, this requirement can also be satisfied by providing the Claimant ID and Control Number printed on the original prepopulated claim forms that were mailed to known class members. Once the registrant establishes such authority, the Class Administrator updates the registrant's status to "approved." If there is only one approved registrant for a given TIN, the registrant may submit a claim for that TIN. Where multiple parties have registered the same TIN, the Class Administrator designates the TIN as being in "conflict" and does not permit any registrant to submit a claim until the conflict is resolved.

[2] A TPF is a business that enters into agreements with merchants to register and prosecute their claims of settlement funds in exchange for a portion of the merchants' recovery. *See MDL 1720*, 2014 WL 4966072, at *4 (E.D.N.Y. Oct. 3, 2014).

The record before me includes the following documents:

- Letter of Agency dated May 17, 2021, between Spectrum and Hub ("2021 Spectrum LOA");
- Claim filing service agreement dated May 31, 2022, between MCAG and Hub;
- Class Administrator's Notice of Conflict dated April 5, 2024;
- Email dated May 8, 2024, from Spectrum to Class Administrator, with a copy to MCAG, concerning attempts to resolve the conflict;
- Emails dated May 9, 2024, among the parties and the Class Administrator, including
    - Statement by Khyle Sutfin of Hub (using the title "VP HR Operations and Total Rewards" stating "We approve MCAG to continue to file on behalf of Hub International. Please withdraw the claims filed by Spectrum." and
    - MCAG's response asking the Class Administrator to accept confirmation of Hub's selection of MCAG as its TPF;
- Emails dated January 10, 2025, between Spectrum and Hub's CPO Sklar ("1/10/25 Emails"), including
    - Spectrum's request that Sklar indicate that Spectrum is Hub's TPF, and
    - Sklar's reply that "Spectrum should be handling for us[;]"
- Class Administrator's Special Master Conflict Determination notice dated February 10, 2025 ("2/10/25 Notice");
- Email dated February 11, 2025, from Spectrum to Class Administrator, with a copy to MCAG, seeking review by the Special Master;
- Letter dated February 14, 2025, from Spectrum to Special Master, enclosing the 2021 Spectrum LOA and the 1/10/25 Emails;
- MAF dated March 19, 2025, signed by CPO Sklar as "an authorized Principal or Officer" of Hub and designating Spectrum as its TPF;
- Class Administrator's Special Master Review Notification dated December 12, 2025; and
- Letter dated January 8, 2026, from Spectrum to Special Master.

II. Analysis

It is blackletter law that a principal generally has the power to revoke an agent's authority, regardless of the existence of any contract between the two under which that revocation may constitute a breach. *See*, *e.g.*, *United Ins. Co. v. World Wide Web*, 2011 WL 1870599, at *2-3 (E.D.N.Y. Apr. 27, 2011) ("a principal has an inviolate right to revoke its agency at any time[;]" if "in doing so, the principal violates its obligations to the agent under their contract, the agent retains the legal recourse of bringing a breach of contract claim") (citing cases), *report and recommendation adopted* 2011 WL 1843280 (E.D.N.Y. May 16, 2011); Restatement (Third) Of Agency § 3.06 (2006).[3] Hub therefore has the authority to choose an agent to register those claims on its behalf with the Class Administrator. After different Hub employees sent emails responding to the conflict by choosing different TPFs, Hub's CPO Sklar completed a Merchant Authorization Form selecting Spectrum as its claim filing agent. Since then, neither Hub nor any party has suggested that CPO Sklar lacked authority to speak for Hub or that Hub has reconsidered its choice. I therefore conclude that Hub has appointed Spectrum as its claim filing agent and revoked any such previous appointment of MCAG. Regardless of any contractual rights MCAG may have as a result of its agreement with Hub, it has no power to override Hub's choice of agent. I therefore respectfully recommend that the Court permit Spectrum, and not MCAG, to register Hub's TINs.

[3] The general rule does not apply when the agent's authority is a "power given as a security." *See*, *e.g.*, *Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 95 F.3d 291, 300 (3d Cir. 1996). However, a merchant's claim filing agreement with a TPF does not create such a power; it creates no more than a revocable agency relationship. *See* Restatement (Third) Of Agency § 3.12, illus. 4 (2006) (patent filing agent who will receive a share of the profits does not hold a power given as security).

Part of the reason this conflict has required review is that the parties failed to follow the Class Administrator's established procedures. Spectrum did not timely respond to 2/10/25 Notice despite receiving repeated, detailed instructions from the Class Administrator about how to do so. On May 14, 2025, the Class Administrator advised Spectrum that it had not submitted its supporting documentation through the Merchant Portal as required and offered Spectrum an opportunity to cure that procedural lapse by submitting its evidence via email. Spectrum did not promptly do so. It was not until August 26, 2026, that Spectrum finally submitted documents supporting its position, including the completed MAF. For its part, MCAG submitted an email response from a different Hub employee than the one who ultimately completed the MAF, and then when the conflict remained open, failed to follow up by submitting a completed MAF.[4] My recommendation is not based on any procedural lapse by either TPF, as resolving the conflict on that basis would unduly prejudice Hub. But I do caution both TPFs that future failure to comply with the Class Administrator's procedural instructions risks the possibility of an adverse outcome.

I do not discount the possibility that MCAG may have some enforceable right against Hub (or some other party) arising out of their 2021 agreement. But MCAG must assert any such claim against whatever party is liable to it rather than as a direct claim for a portion of the settlement fund. MCAG has not mentioned the possibility of any such lawsuit, and I do not address its merits here. Further, I would recommend against adjudicating any such claim within

[4] Identifying a merchant's preferred TPF informally via email can be sufficient to resolve a conflict. Some conflicts among multiple TPFs have been resolved on consent where the merchant sends an email selecting its preferred TPF and all parties affirmed their willingness to abide by that choice in emails sent to all concerned. In the absence of such agreement, however, requiring the submission of a completed MAF executed by an authorized principal or officer of the merchant has proved to be a useful way to establish the merchant's actual preference.

the *MDL 1720* litigation. As this Court has already held, such ancillary claims "do not fall under this Court's retained settlement jurisdiction" but must instead be litigated "in independent lawsuits, outside of MDL 1720." *In re MDL 1720 Damages Class Settlement Disputes*, 2026 WL 2389790, at *1 (E.D.N.Y. Aug. 17, 2026).

## III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court direct the Class Administrator to process Spectrum's registration of Hub's TINs and withdraw MCAG's.

## IV. Objections

This Report and Recommendation will be served on MCAG and Spectrum via the Court's ECF system, and the Class Administrator will also promptly provide a copy to both. Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-04318-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMC-JAM, Doc. 3, ¶ 4.

Dated: October 23, 2026

*/s/ James Orenstein*
Special Master